UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAYNACE C. WILLIAMS,

        Plaintiff,

v.                                            Case No.  8:12-cv-699-T-27AEP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income

("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence

and employed proper legal standards, I recommend that the Commissioner's decision be affirmed.

## I.

### A.      Procedural Background

        Plaintiff filed an application for SSI (Tr. 106-08).  The Commissioner denied her claims

both initially and upon reconsideration (Tr. 60-65, 68-69, 72).  Plaintiff then requested an

administrative hearing (Tr. 73-75).  Per her request, the ALJ held a hearing at which Plaintiff

appeared and testified (Tr. 30-59).  Following the hearing, the ALJ issued an unfavorable decision

finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 11-29).

---

    [1]  On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action.  *See* 42 U.S.C. 405(g); Fed. R. Civ. P. 25(d).

Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 2-6).  Plaintiff then timely filed a complaint with this Court (Dkt. No. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born on December 25, 1962, claims disability beginning September 22, 2009 (Tr. 32-33, 106).[2]  She has an eleventh-grade education (Tr. 35, 166).  Her past relevant work experience includes work as a fast-food cashier (Tr. 163, 194-97).  She alleges disability due to nerve damage, arthritis, heart failure, and severe pain in her leg and chest (Tr. 162, 257).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: cardiomyopathy, status post heart catheterization with normal electrocardiogram and normal ventricular systolic function, major depressive disorder, alcohol dependence, history of cocaine abuse, and chest pain (Tr. 16).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with certain noted limitations (Tr. 18).  Namely, the ALJ found that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently; sit for six hours in an eight-hour workday; stand or walk for six hours in an eight-hour workday; occasionally climb, balance, stoop, crouch, and kneel; able to perform task-

---

[2]  Initially, Plaintiff alleged an onset date of August 25, 2004, but later amended the onset date to September 22, 2009, during the administrative hearing (Tr. 32-33, 106, 150).

oriented activity with low social demands; able to perform simple, repetitive tasks with minimal interaction with supervisors and the public; should avoid all hazards, including dangerous moving machinery and unprotected heights; should avoid excessive noise, vibration, humidity, and wetness; should avoid concentrated exposure to heat and cold; and should avoid dust, fumes, and gases (*id.*).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC (Tr. 19-21).

Considering her noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 21).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a mail room clerk, line inspector, and office helper (Tr. 22, 54).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 22-23).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from

anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation

4

marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues here that the ALJ erred by failing to adequately develop the record, failing to properly assess Plaintiff's RFC and credibility, and failing to support the finding at step five of the sequential analysis.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.     ALJ's Duty to Develop the Record

Initially, Plaintiff contends that the ALJ erred by failing to properly develop the record. Namely, Plaintiff argues that the ALJ erred by failing to request opinions regarding Plaintiff's

5

function-by-function limitations from Dr. George Toth, Dr. Cecilia Yocum, and Dr. Mary Stedman.[3]  Even though Social Security courts are inquisitorial rather than adversarial in nature, claimants must establish their eligibility for benefits.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).  Though the claimant bears the burden of providing medical evidence showing she is disabled, the ALJ is charged with developing a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  The ALJ has the basic obligation to develop a full and fair record without regard for whether the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  When the Plaintiff demonstrates that the record reveals evidentiary gaps which result in unfairness or "clear prejudice," remand is warranted.  *Brown*, 44 F.3d at 935; *see Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (stating that the claimant must show some prejudice before a court will order a remand to the Commissioner for further development of the record).

The ALJ should re-contact a medical source when the evidence received from such source is inadequate to determine whether a claimant is disabled.  *Couch v. Astrue*, 267 Fed. App'x 853, 855 (11th Cir. 2008) (citing 20 C.F.R. § 404.1512(e)).[4]  In this instance, Plaintiff contends that the ALJ had a duty to re-contact Dr. Toth, Dr. Yocum, and Dr. Stedman for opinions regarding

---

[3]  Plaintiff also contends that the ALJ improperly weighed Dr. Stedman's diagnosis of schizophrenia.  As discussed further below, however, the record does not support Dr. Stedman's diagnosis of schizophrenia and, thus, the ALJ did not need to afford the opinion controlling or significant weight.

[4]  The prior version of 20 C.F.R. § 416.912(e)(1) was effective June 13, 2011 through March 25, 2012 and is now incorporated in 20 C.F.R. § 416.920b.  For ease of reference, this Report and Recommendation shall refer to the Regulation in effect at the time of the ALJ's decision on July 1, 2011, *i.e.* to 20 C.F.R. § 416.912(e)(1) (2011).

Plaintiff's function-by-function limitations.  With regard to Dr. Toth, Plaintiff simply argues that, due to the extensive treating relationship between Plaintiff and Dr. Toth, the ALJ should have re-contacted Dr. Toth for an opinion as to Plaintiff's function-by-function limitations.  Dr. Toth treated Plaintiff at Tampa General Hospital from February 2008 through October 2010, diagnosing Plaintiff as having hypertension, congestive heart failure, and bipolar disorder (Tr. 278-99, 440-62, 615).  During that time, Dr. Toth performed several physical examinations and recorded his findings stemming from each examination (*id.*).

With respect to Dr. Yocum, Plaintiff contends that Dr. Yocum's psychological report contains an unresolved ambiguity.   Specifically, Plaintiff argues that Dr. Yocum diagnosed Plaintiff as suffering from moderate major depressive disorder, post-traumatic stress disorder (PTSD), alcohol dependence, and past history of cocaine abuse but that Dr. Yocum failed to render an opinion as to Plaintiff's function-by-function limitations.  As such, Plaintiff contends that the ALJ should have also re-contacted Dr. Yocum for a function-by-function assessment of Plaintiff's limitations.

Dr. Yocum performed a consultative mental status examination of Plaintiff in November 2009 (Tr. 425-28).  Upon examination, Dr. Yocum observed Plaintiff as oriented in all three spheres with normal psychomotor behavior and clear, coherent, logical, and rational speech but with a dysthymic mood, restricted affect, and poor energy level (Tr. 426-27).  Dr. Yocum further observed that Plaintiff's long-term memory appeared to be intact, Plaintiff knew the name of the current and prior President, Plaintiff could recall two out of three objects after a period of five minutes, Plaintiff could spell the word "world" forward and backward, Plaintiff could repeat only

7

four digits forward and two digits backward, Plaintiff was unable to perform serial 7s, Plaintiff was unable to interpret a simple proverb, and Plaintiff's judgment into hypothetical social situations was mixed but her abstract reasoning was good (Tr. 427).  During the examination, Plaintiff reported that she felt like she heard someone calling her name or felt like someone was in the next room, she argued with people when she was stressed, and she had problems with bad dreams, flashbacks, and was hypervigilant and hyperalert since suffering sexual abuse by a stepfather when she was younger (*id.*).  Dr. Yocum diagnosed Plaintiff with moderate major depressive disorder, PTSD, alcohol dependence, and past history of cocaine abuse, noting that Plaintiff demonstrated signs and symptoms of both depression and PTSD as well as a past history of cocaine usage in reported remission but with a continuing alcohol dependence (Tr. 427-28).

As to Dr. Stedman, Plaintiff also contends that the ALJ should have re-contacted Dr. Stedman for a function-by-function analysis of Plaintiff's limitations based on Dr. Stedman's diagnosis of schizophrenia.  As the record indicates, Dr. Stedman provided mental health treatment to Plaintiff from July 2010 through April 2011 (Tr. 648-80, 715-18).  During that time, Dr. Stedman noted that Plaintiff reportedly isolated herself and did not talk to people, felt paranoid that people were talking about her, felt depressed most days, lacked motivation, did not have good concentration, and felt hopeless and helpless (Tr. 648-49, 656-58).  Dr. Stedman diagnosed Plaintiff with schizophrenia and a history of substance abuse (Tr. 661,  715-18).

Upon review of the record, including the treatment notes and findings of Drs. Toth, Yocum, and Stedman, Plaintiff's argument that the ALJ erred by not re-contacting those physicians for function-by-function assessments of Plaintiff's limitations lacks merit.  Indeed,

Plaintiff attempts to create ambiguities and omissions where none exist. *See* 20 C.F.R. § 416.912(e)(1) (prior version explaining an ALJ's duty where ambiguities exist in the record). Drs. Toth, Yocum, and Stedman each provided sufficient information and analysis of Plaintiff's impairments for the ALJ to make an informed decision. The ALJ discussed and considered each of their findings and opinions, along with the other evidence of record, in concluding that Plaintiff was not disabled (Tr. 19-21). In doing so, the ALJ applied the proper legal standards and did not err in failing to obtain a function-by-function analysis of Plaintiff's capabilities from any doctor. More specifically, the ALJ properly developed the record in this case and did not err by failing to re-contact Drs. Toth, Yocum and Stedman.

Moreover, as to Dr. Yocum, although she did not provide a function-by-function assessment of Plaintiff's limitations, the absence of a statement in a consultative examination report about what a claimant can still do despite his or her impairments does not render the report incomplete. 20 C.F.R. § 416.919n(c)(6). Plaintiff concedes this point. Accordingly, for that reason alone, the ALJ was not required to re-contact Dr. Yocum to obtain a function-by-function assessment of Plaintiff's limitations.

Furthermore, as the Commissioner notes, a physician's opinion as to what a claimant can still do despite his or her impairments differs from an ALJ's assessment of a claimant's RFC. *See* 20 C.F.R. §§ 416.913(b) & (c), 416.945, 416.946; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 (S.S.A. July 2, 1996). Indeed, SSR 96-5p explains:

> Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting

the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s).

\*\*\*

A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC. Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment.

SSR 96-5p, 1996 WL 374183, at \*4, \*5. The Regulations also explicitly state that the determination of the RFC constitutes an issue reserved to the Commissioner. 20 C.F.R. § 416.927(d)(2). As such, the ALJ was not required to obtain function-by-function assessments regarding Plaintiff's limitations from Plaintiff's physicians. Instead, the ALJ was required to consider the findings and opinions of the physicians in making the administrative finding as to Plaintiff's RFC and ability to perform work-related functions. As noted above, the ALJ considered the findings of Drs. Toth, Yocum, and Stedman and fully developed the record in that regard.

**B.     RFC**

Next, Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as

10

to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record.

With respect to her RFC, Plaintiff argues that the ALJ erred by affording improper weight to the opinions of the state agency physicians, the opinion of Dr. Maya Guglian, the opinion of Dr. Stedman, and the Functional Capacities Assessment submitted by Tampa General Hospital's WORK Center. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. § 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. § 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. § 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's

11

opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

### i.     State Agency Physicians

With regards to the state agency physicians, Drs. Jesse Palmer, Nancy Dinwoodie, and Keith Bauer, Plaintiff contends that the ALJ erred in weighing the opinions of each. Namely, Plaintiff contends the ALJ erred by failing to sufficiently explain the reasons for adopting the finding of Dr. Palmer that Plaintiff could perform light work and by failing to state with particularity the weight afforded to the opinions of Dr. Dinwoodie and Dr. Bauer. In his decision, the ALJ stated that he adopted Dr. Palmer's opinion that Plaintiff could perform light work and stated that he considered the opinions of Dr. Dinwoodie and Dr. Bauer regarding Plaintiff's mental impairments and limitations but did not explicitly state what weight he afforded such opinions (Tr. 20). Notwithstanding, the ALJ properly considered the state agency physicians' opinions and each opinion supports the ALJ's RFC finding.

In January 2010, Dr. Bauer completed a Psychiatric Review Technique and Mental RFC Assessment for Plaintiff (Tr. 506-19, 520-23). Dr. Bauer opined that Plaintiff had moderate major depressive disorder, PTSD, and alcohol dependence (Tr. 509, 511, 514). Given those impairments, Dr. Bauer concluded that Plaintiff had mild restriction of his activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr.

516).  Dr. Bauer further concluded that Plaintiff had no limitations with understanding, memory, and sustained concentration and persistence (Tr. 520-21).  More specifically, Dr. Bauer found that Plaintiff could understand and recall simple to moderately complex instructions, follow and execute simple to moderately complex directives, and persist at tasks for a regular workday at an appropriate pace and sustain that level over weeks and months (Tr. 522).  In fact the only areas in which Dr. Bauer found Plaintiff limited included Plaintiff's ability to interact with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to respond appropriately to changes in the work setting (Tr. 521).  Even so, Dr. Bauer determined that Plaintiff was only moderately limited in those areas and was otherwise not limited with respect to social interaction or adaptation abilities (*id.*).  According to Dr. Bauer, Plaintiff would work best in an environment in which she had limited contact with the public and reduced interpersonal demands and could adapt to most changes and task demands on a sustained basis (Tr. 522).

Following that, Dr. Dinwoodie completed a Psychiatric Review Technique in April 2010 (Tr. 536-49).  Dr. Dinwoodie determined that Plaintiff was even less limited than Dr. Bauer had previously found.  Indeed, Dr. Dinwoodie concluded that Plaintiff had only mild restrictions of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace and that Plaintiff had no episodes of decompensation of extended duration (Tr. 546).  Dr. Dinwoodie further found that Plaintiff was capable of activities of daily living, capable of following instructions, able to socialize with her family, and was socially appropriate (Tr. 548).

13

The next month, Dr. Palmer completed a Physical RFC Assessment (Tr. 550-57). Dr. Palmer found Plaintiff capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking for six hours in an eight-hour workday, and sitting about six hours in an eight-hour workday (Tr. 551). Dr. Palmer found that Plaintiff's ability to push and pull was unlimited but that Plaintiff had occasional postural limitations due to her stress cardiomyopathy and had to avoid concentrated exposure to environmental factors but did not have any manipulative, visual, or communicative limitations (Tr. 551-54).

As noted above, in finding Plaintiff not disabled, the ALJ considered each of the opinions of the state agency physicians (Tr. 20). With respect to Dr. Bauer and Dr. Dinwoodie, Plaintiff contends that the ALJ did not explain what weight he afforded the opinions but, rather, stated only that he considered the opinions. Indeed, the ALJ did not explicitly state the weight he afforded the opinions of Dr. Bauer and Dr. Dinwoodie, but the decision and RFC assessment makes clear that he considered the opinions and incorporated them into the RFC. Dr. Bauer and Dr. Dinwoodie found that Plaintiff had mild restriction of his activities of daily living and mild difficulties in maintaining concentration, persistence, or pace with no episodes of decompensation of extended duration. At most, they found that Plaintiff had moderate difficulties in maintaining social functioning. Namely, Dr. Bauer found Plaintiff limited included Plaintiff's ability to interact with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to respond appropriately to changes in the work setting. Considering the opinions of both Dr. Bauer and Dr. Dinwoodie, the ALJ limited Plaintiff to performing task-oriented activity with low social demands and simple, repetitive tasks with

14

minimal interaction with supervisors and the public (Tr. 18).  Plaintiff does not contend that the ALJ did not take properly consider the limitations set forth by either Dr. Bauer or Dr. Dinwoodie nor argue that the RFC fails to account for such limitations.  Instead, Plaintiff merely contends that the ALJ did not explicitly state the weight afforded to each. Although the ALJ did not explicitly state the weight he afforded the opinions of Dr. Bauer and Dr. Dinwoodie, the ALJ's RFC assessment reflects that the ALJ properly considered each opinion, correctly afforded each opinion at least some weight, and appropriately incorporated the limitations set forth in each.

With regards to Dr. Palmer, Plaintiff contends that the ALJ did not state the reasons he adopted the opinion that Plaintiff could perform light work.  As the ALJ's decision indicates, however, the record supported Dr. Palmer's finding that Plaintiff could perform light work and, as such, the ALJ was entitled to adopt that opinion and afford it substantial weight.  Indeed, as the ALJ noted, both the records from USF Health and Family Care Medical Center and Dr. Maya Guglin supported the finding that Plaintiff could perform light work (Tr. 21).   As the ALJ explained, the objective medical evidence demonstrated Plaintiff had non-ischemic cardiomyopathy and only mild to moderate exacerbations associated with cocaine use and conditions related to or secondary to history of cocaine use and longstanding alcohol abuse (Tr. 21).  Although Plaintiff stated that she was unable to work due to heart problems, Plaintiff's cardiomyopathy had resolved nearly a year prior (*id.*).  Furthermore, the ALJ noted that, while failing to set forth a maximal effort, Plaintiff demonstrated an ability to produce maximal force of twenty pounds (Tr. 20). Given the evidence of record, the ALJ properly adopted Dr. Palmer's opinion that Plaintiff maintained the ability to perform light work.   The ALJ discussed the

15

evidence of record in his decision and, as explained the decision, substantial evidence supports the finding that Plaintiff retained the ability to perform light work with the additional limitations set forth by the ALJ. Accordingly, for the reasons set forth above, the ALJ did not err with respect to his consideration of the state agency physicians.

## ii.    Dr. Guglin

As to Dr. Guglin, Plaintiff contends that the statements by Dr. Guglin did not constitute medical opinions were not entitled to any weight because they were rendered prior to the alleged onset date (Tr. 344-48, 350-61, 603-05). In rendering his decision, the ALJ gave great weight to Dr. Guglin's March 24, 2008 opinion that Plaintiff was alert and oriented in all spheres, in no acute distress, and very pleasant (Tr. 20, 354-55). The ALJ also gave considerable weight to Dr. Guglin's July 20, 2009 opinion that Plaintiff's cardiomyopathy was resolved (Tr. 20, 359-61). According to Plaintiff, these findings do not constitute medical opinions because they do not reflect judgments about the nature and severity of Plaintiff's impairments, such as symptoms, diagnosis and prognosis, capabilities despite the impairment, and physical or mental restrictions. *See* 20 C.F.R. § 416.927(a)(2). Review of Dr. Guglin's treatment notes, however, reveals Dr. Guglin's observations and opinions about the nature and severity of Plaintiff's impairments.

For example, Dr. Guglin's treatment notes from March 24, 2008, indicate that Plaintif demonstrated normal vital signs, neck, lungs, cardiovascular, abdomen, and musculoskeletal findings (Tr. 354-55). Dr. Guglin found Plaintiff alert, oriented in all three spheres, in no acute distress, and very pleasant (Tr. 355). Dr. Guglin noted that repeat echocardiography performed three weeks prior to her appointment revealed normal ventricular systolic function, which was

an improvement from her initial reading of an ejection fraction of around forty percent previously (*id.*). Dr. Guglin found that Plaintiff had no wall motion abnormalities and the study was grossly normal and therefore opined that Plaintiff appeared to have recovered her left ventricular systolic function in the settling of initiation of extended background medical therapy for heart failure (*id.*). Dr. Guglin noted further that the majority of Plaintiff's left ventricular systolic function was most likely due to her previous use of crack cocaine in combination with anemia but, regardless, Plaintiff had normal ventricular systolic function and was on the right medication regimen (*id.*).

Similarly, Dr. Guglin's treatment notes from July 20, 2009, also provide information regarding the nature and severity of Plaintiff's impairments. According to Dr. Guglin, Plaintiff was following up with Dr. Guglin regarding chest pains, which, on clinical history and exam, appeared to be musculoskeletal in origin (Tr. 361). Plaintiff reported to Dr. Guglin that she had severe tenderness in the left pectoral muscle area and continued to follow her primary care physician for pain medication and treatment and already had a negative cardiac cath done a year ago (*id.*). Dr. Guglin found that Plaintiff's blood pressure was under control, her heart failure and cardiomyopathy was resolved, and she did not appear to be volume overloaded so could be taken off of her medication for that issue (*id.*).

Given the foregoing, Dr. Guglin provided medical opinions as to the nature and severity of Plaintiff's impairments and the ALJ thus appropriately considered those opinions in rendering his decision. Though Dr. Guglin rendered these opinions prior to the alleged onset date (Tr. 350-61), her opinions provided context as to Plaintiff's impairments during the relevant period. Indeed, the ALJ found Plaintiff's cardiomyopathy and status post heart catheterization with

17

normal electrocardiogram and normal ventricular systolic function to be severe impairments (Tr. 16).  It was incumbent upon the ALJ, therefore, to address and consider the medical opinions of record with respect to those impairments.  Accordingly, the ALJ properly considered Dr. Guglin's opinions and afforded those opinions the appropriate weight in determining Plaintiff's RFC.  As such, the ALJ did not err.

### iii.   Dr. Stedman

With respect to Dr. Stedman's diagnosis of schizophrenia, Plaintiff contends that the ALJ improperly substituted his own judgment for that of Dr. Stedman's.  As noted above, Dr. Stedman provided mental health treatment to Plaintiff from July 2010 through April 2011 (*see* Tr. 648-80, 715-18).  In April 2011, Dr. Stedman filled out a RFC Questionnaire in which she diagnosed Plaintiff as schizophrenic and noted that Plaintiff's prognosis was poor (Tr. 715-18).  In considering Dr. Stedman's RFC assessment, the ALJ afforded little weight to Dr. Stedman's diagnosis of Plaintiff as schizophrenic (Tr. 20, 715-16).  The ALJ noted that Plaintiff was capable of performing activities of daily living without assistance and capable of following instructions, Plaintiff did not seek mental health treatment until March 2010, and Plaintiff's November 2009 formal mental status evaluation was essentially normal (Tr. 20-21).

In fact, the record, including Dr. Stedman's own treatment notes, established good cause for not affording substantial or controlling weight to Dr. Stedman's diagnosis of Plaintiff as schizophrenic.  For example, Dr. Stedman's treatment notes indicated that Plaintiff was alert and oriented, denied feeling irritable, and denied audio and visual hallucinations although she was still paranoid that people were watching her and talking about her (Tr. 656, 658, 661).  During her

18

treatment with Dr. Stedman, Plaintiff stated that she took care of her activities of daily living (Tr. 656). Additionally, and as discussed more fully above, Dr. Yocum's November 2009 mental status evaluation revealed that Plaintiff suffered from moderate major depressive disorder, PTSD, alcohol dependence, and past history of cocaine abuse but did not indicate that Plaintiff had any indication of schizophrenia (Tr. 425-28). Accordingly, given the evidence of record, the ALJ properly found good cause for not affording substantial or considerable weight to Dr. Stedman's diagnosis of Plaintiff as schizophrenic. *See Phillips,* 357 F.3d at 1241. In doing so, the ALJ did not substitute his judgment for that of Dr. Stedman. Instead, the ALJ properly found that the evidence of record supported a contrary conclusion and Dr. Stedman's own treatment notes did not support a diagnosis of schizophrenia. Substantial evidence supports the ALJ's finding in that regard.

### iv. Functional Capacities Assessment

Finally, with regards to the Functional Capacities Assessment, Plaintiff argues that the ALJ erroneously picked only those findings that supported his conclusion (Tr. 561-70). As the Functional Capacities Assessment indicates, upon evaluation, Plaintiff presented with the following: decreased functional capacities specific to carrying, climbing, standing, reaching forward, reaching overhead, stooping, walking, kneeling, crouching, bending, crawling, balancing, and squatting; decreased range of motion of the cervical spine, the bilateral shoulders, the thoraco lumbar spine and the bilateral lower extremities; decreased strength of the left upper extremity and of the bilateral lower extremities; bilaterally decreased grip and pinch strength; bilaterally decreased manual dexterity; decreased knowledge of and a decreased ability to

repetitively utilize proper body mechanics, lifting and injury prevention techniques; and overall de-conditioning (Tr. 563). As a result, and given Plaintiff's maximum force producing capability of twenty pounds, the Functional Capacities Assessment indicated that Plaintiff was functioning with some deficits at the sedentary work level (*id.*). Notably, however, the Functional Capacities Assessment demonstrated that Plaintiff scored extremely low on validity tests,[5] which indicated that the test results lacked validity for determining Plaintiff's ability to return to work and mandated that extreme caution be used when interpreting the test results and utilizing those results to make permanent impairment or return-to-work decisions (Tr. 564). The results further suggested that Plaintiff did not put forth maximal effort (*id.*). Given the poor validity of the test results, the physical therapist recommended continued evaluation of Plaintiff's functional status (Tr. 563). Moreover, Plaintiff's responses to the pain questions indicated that Plaintiff possessed a tendency toward symptom magnification (Tr. 564).

In considering the Functional Capacities Assessment, the ALJ adopted the finding that Plaintiff could produce maximal force of twenty pounds but rejected the finding that Plaintiff was functioning with some deficits at the sedentary duty level because the results indicated that Plaintiff was not performing the assessment with maximal effort and were thus invalid. Plaintiff contends the ALJ erred by adopting part of the findings while rejecting others. As the Commissioner notes, however, Plaintiff was capable of producing maximal force of twenty pounds during the evaluation, an amount which comports with the exertional requirements of

---

[5] The Assessment indicates that Plaintiff scored 27% on the validity tests, where 75% is considered a passing score (Tr. 564).

light work.  *See*  20 C.F.R. § 416.967(b).  Plaintiff was able to produce this maximal force

without setting forth maximal effort, meaning that Plaintiff could possibly have produced more

maximal force.  Regardless of whether Plaintiff could exert greater maximal force, she

demonstrated that she could perform the exertional requirements of light work rather than only

a reduced range of sedentary work.  As such, the ALJ properly adopted the portion of the

Functional Capacities Assessment findings relating to Plaintiff's maximal force capability and

properly rejected the finding that Plaintiff functioned with some deficits at the sedentary duty

level.

> ### C.    Credibility

Plaintiff further contends that the ALJ failed to apply the appropriate standard in assessing

Plaintiff's credibility.  In addition to the objective evidence of record, the Commissioner must

consider all the claimant's symptoms, including pain, and the extent to which these symptoms

can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20

C.F.R. § 416.929.  In social security disability cases, credibility determinations fall within the

province of the ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  Typically, the

ALJ makes credibility determinations regarding a claimant's subjective complaints and must

provide specific reasons for the credibility finding.  *See Holt v. Sullivan*, 921 F.2d 1221,1223

(11th Cir. 1991); SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).  To establish a disability

based on testimony of pain and other symptoms, the claimant must show evidence of an

underlying medical condition and either (1) objective medical evidence confirming the severity

of the alleged symptoms or (2) that the objectively determined medical condition can reasonably

be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. § 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

As noted above, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the limitations set forth in the RFC (Tr. 19). In support of his credibility finding, the ALJ cited to a third-party function report submitted by Plaintiff's daughter, to the objective medical evidence of record, to the opinions of Plaintiff's physicians and the state agency physicians, and to Plaintiff's own inconsistent statements of record (Tr. 19-21). Although the ALJ did not address each and every purported subjective complaint identified by Plaintiff, the ALJ provided ample reasons to find Plaintiff not entirely credible and thus to discredit her subjective complaints.

Initially, as to the third-party function report, the ALJ noted that Plaintiff's daughter stated that Plaintiff made breakfast, cooked sporadically, watched television, read, took computer classes, cleaned the house and did laundry for four to five hours per week, shopped two to three times per month for up to two hours, needed to rest when walking, and did not need assistance to use public transportation (Tr. 19, 213-20). Plaintiff argues that the ALJ should not have considered Plaintiff's participation in such minimal daily activities as indicative of an ability to

22

work. In evaluating and discrediting a claimant's complaints, however, the ALJ may consider the claimant's daily activities. 20 C.F.R. § 416.929(c)(3)(i); *Conner v. Astrue*, 415 Fed. App'x 992, 995 (11th Cir. Feb. 28, 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints" (citation omitted)); *see Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (considering the ability to perform such tasks as dialing a phone, writing, opening a door, buttoning, and unbuttoning in finding that a plaintiff retained the ability to perform sedentary work); *but see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (stating "[n]or do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant's] treating physicians."). In this instance, the ALJ did not consider Plaintiff's activities of daily living in isolation or cite to those activities as the sole reason for discrediting Plaintiff's subjective complaints. Rather, the ALJ considered the fact that Plaintiff could engage in such activities as cooking, cleaning, shopping, and using public transportation as evidence that Plaintiff's subjective complaints were not as severe as she alleged. Though the ALJ did not recite every purported symptom or complaint identified by Plaintiff as they related to the performance of her daily activities, the ALJ provided a thorough discussion of Plaintiff's daily activities and demonstrated that Plaintiff's performance of those activities weighed against a finding of disability.

In properly discrediting Plaintiff's subjective complaints, the ALJ also pointed to the objective medical evidence and medical opinions of record. Namely, the ALJ considered Plaintiff's records from Tampa General Hospital, Family Care Medical Center, USF Health, and

Stedman Clinical Research as well as the medical opinions of Drs. Guglin, Yocum, Palmer, Dinwoodie, Bauer, and Stedman (Tr. 19-21). As the ALJ noted, the medical records and opinions indicated that Plaintiff's alcohol and prior drug use may have contributed to or exacerbated her heart and mental health impairments, Plaintiff presented to medical professionals with essentially normal findings during both mental and physical examinations, Plaintiff's heart issues resolved over the course of her treatment, Plaintiff maintained the ability to perform light work, and Plaintiff demonstrated a tendency toward symptom magnification (*see* Tr. 19-21, 345-46, 350-61, 506-23, 536-49, 550-57, 559-70, 634-46). In fact, as noted above, a Functional Capacity Assessment indicated that Plaintiff did not put forth her maximal effort during testing and that Plaintiff possessed a tendency toward symptom modification (Tr. 561-70). All of these findings demonstrated that Plaintiff's subjective complaints did not rise to the level she alleged and therefore support the ALJ's credibility determination.

In addition, Plaintiff contends that the ALJ erred by discussing Plaintiff's conflicting statements regarding her alcohol and prior drug usage. Essentially, Plaintiff argues that the ALJ should not have considered statements regarding Plaintiff's alcohol and prior drug usage which preceded the alleged disability onset date and, even considering Plaintiff's statements, the ALJ failed to demonstrate that the use of alcohol materially affected Plaintiff's ability to work. In his opinion, the ALJ discussed Plaintiff's inconsistent statements regarding her drug and alcohol usage for the period from January 28, 2008 through April 12, 2011, a period which includes statements made both prior to and subsequent to the alleged disability onset date. The ALJ referenced Plaintiff's conflicting statements in an effort to further demonstrate that Plaintiff was

24

not entirely credible, not to demonstrate how alcohol or drug usage affected Plaintiff's ability to work.   Indeed, in making a credibility determination, the ALJ may consider whether any inconsistencies exist in the evidence and the extent to which any conflicts exist between a claimant's statements and the rest of the evidence.  20 C.F.R. § 416.929(c)(4).  Accordingly, under the Regulations, the ALJ was permitted to consider such conflicting information in rendering a credibility determination.  *See id.*

In sum, the ALJ properly found Plaintiff's subjective complaints not entirely credible. The ALJ provided explicit and adequate reasons, each of which find support in the record, in discrediting Plaintiff's subjective complaints.  As such, the ALJ did not err and his credibility determination is supported by substantial evidence.

### D.     Hypothetical

Finally, Plaintiff argues that the ALJ erred by posing an incomplete hypothetical to the VE, which thereby rendered the VE's testimony erroneous.  At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work.  *Phillips*, 357 F.3d at 1239; 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work, a finding of not disabled is warranted.  *Phillips*, 357 F.3d at 1239.  Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted.  *Id.*  At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in the national economy which, given the claimant's impairments, the claimant can perform.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citation omitted); *Foote*, 67 F.3d at 1559.  "The ALJ must

25

articulate specific jobs that the claimant is able to perform, and this finding must be supported

by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227.  There are

two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the

national economy; namely, by applying the Grids and by the use of a VE.  *Phillips*, 357 F.3d at

1239-40.  Typically, where the claimant cannot perform a full range of work at a given level of

exertion or where the claimant has non-exertional impairments that significantly limit basic work

skills, the preferred method of demonstrating the claimant can perform other jobs is through the

testimony of a VE.  *Jones*, 190 F.3d at 1229.

     If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to

the VE that takes into account all of the claimant's impairments.  *Ingram*, 496 F.3d at 1270.  If

the ALJ properly rejects purported impairments or limitations, the ALJ need not include those

findings in the hypothetical posed to the VE.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155,

1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that

the ALJ had properly rejected as unsupported").  For a VE's testimony to constitute substantial

evidence, however, the ALJ must pose a hypothetical question which comprises all of the

claimant's impairments.  *Wilson*, 284 F.3d at 1227.

     In this instance, the ALJ posed a detailed and accurate hypothetical to the VE which

incorporated all of Plaintiff's credible impairments and limitations.  Namely, the ALJ posed the

following hypothetical to the VE:

> Let me pose a hypothetical question to you, Mr. Harvey.  In this hypothetical
> question, please assume that we have an individual the same age as the claimant,
> who on the amended alleged onset date was 46.  Assume the same educational

background, an 11th-grade education, and work experience as a fast food worker, with no transferable skills. But this hypothetical worker that I am describing for you retains the residual functional capacity for a limited range of light work, as such term is defined in the Social Security Regulations, so further assume this hypothetical person can lift and carry 20 pounds, but only occasionally; more like 10 pounds on a frequent basis. Can sit for six hours out of eight, can stand and walk a combined six hours out of eight. Pushing and pulling are limited. Can occasionally climb, balance, stoop, crouch, and kneel. Must avoid moving machinery, unprotected heights, and hazards; avoid excessive noise and vibration; avoid humidity and wetness; avoid concentrated exposures to heat and cold; avoid dust, fumes, gases, poor ventilated areas. Is reduced to simple, repetitive, routine tasks with minimal interaction with supervisors and minimal interaction with the general public; essentially simple, repetitive, routine tasks with low social demands. Let me look for some more information that might help you. Bear with me for a second, Mr. Harvey, while I put this information in the computer. This worker has moderate limitations in the ability to, to interact in an appropriate manner with the general public. Also has moderate limitation in the ability to accept instructions and respond in an appropriate manner to criticism from supervisors, and has a moderate limitation in the ability to respond in an appropriate manner to changes in the work setting. Is able to arrange for transportation and avoid hazards; can adapt to most changes and task demands, and is able to understand and recall simple and moderately complex instructions. In essence, is able to perform task-oriented activities with low social demands. ...

(Tr. 52-54). In doing so, the ALJ omitted reference to any impairments or limitations that he had already appropriately rejected in the analysis, as discussed more fully above. *See Crawford*, 363 F.3d at 1161. Based on the accurate hypothetical encompassing all of Plaintiff's credible impairments and limitations, the VE opined that Plaintiff could not perform her prior work but that she could perform other work existing in significant numbers in the national economy (Tr. 54). As such, the VE's testimony constituted substantial evidence upon which the ALJ properly found that Plaintiff was not disabled.

## IV.

Accordingly, for the foregoing reasons, it is

27

RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 23rd day of August, 2013.

ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:
Hon. James D. Whittemore
Counsel of Record

29